We'll hear argument now in the case of Yates v. Chicago. Yates v. Chicago Mr. Sweeney. Thank you, Your Honor. If we could request five minutes for rebuttal. Thank you. May it please the Court. Good morning, Your Honors. Today, we are here on the appeal of the District Court's decision granting summary judgment on two counts brought by the plaintiffs. One for violation of the 14th Amendment due process clause and a second for a state law claim for promissory estoppel. As the Court is aware, the plaintiffs in this case are aviation security officers who worked for the Department of Aviation for a substantial amount of time. In the case of Mr. Jemison, almost three decades. During that time, back in 1993, the Department of Aviation decided that all of its ASOs would become law enforcement officers. It required them to go to the Police Academy for the City of Chicago. It required them to pass the power exam, the mental exam. And it also required them to certify as state law enforcement officers every year and to fire a weapon and meet the minimum requirements for marksmanship. Mr. Sweeney, I understand that you have a potential argument under state law. I have more difficulty with an argument under the due process clause. What process is it that you believe your clients were entitled to but didn't receive? So, Your Honor, the process should have been that the individuals, the ASOs, who were at that point certified as law enforcement officers should have been given an opportunity to challenge the decision by the city. Well, it could have sued in state court. The reason I'm asking is because it's pretty clear at the Supreme Court level that legislative decisions, that is, decisions made by a legislature or administrative body affecting more than one person, don't require individual hearings. They're made in the legislative way by issuing rules or by adopting statutes or things like that. And the due process clause doesn't require individual hearings. That's why I'm asking what process you think the Constitution entitled your clients to. Your brief doesn't really spell that out, and this is your chance. Certainly. The process, we believe, is that each of these officers who would have been certified, if in fact under the Police Powers Act they were to be decertified, and the ILETSB, and I apologize for the acronyms, but the Illinois Law Enforcement Training Standards Board, if they decided in the limited circumstance that they could remove someone's certification, then that person is entitled to process under the Illinois Police Powers Act. Under Illinois law, that's fine, but it's very well established that you can't use the Constitution to enforce state law. That's why, so let me ask my question again. Given the Supreme Court's holding that legislative level decisions, decisions that affect a lot of people identically, do not require individual hearings, what process do you think it is that the Constitution of the United States entitles your clients to? We believe that they would have been entitled to a hearing. Why? That just seems inconsistent with the Supreme Court's holding in cases like Bimetallic, which says that legislative level decisions do not require hearings, and we generally try to follow the Supreme Court. Understood, but this wasn't a legislative level decision. This did not rise to that level at all. In fact, what happened was the Illinois Law Enforcement Training Standards Board asked the City of Chicago why these people were ASOs. Yes, made a decision applicable to lots of people at once. That's what the Supreme Court means by legislative decision. Right, but no one made a legislative decision here. The difference here is that the City of Chicago, the office of the General Counsel at the City of Chicago simply said, you're right, we can't find any authority for why these people were law enforcement officers, and therefore, you're correct, they are not and never were police. Therefore, you can decertify them. There was no legislative decision. This was written by one of the lawyers at the City of Chicago. Counsel, I just don't think you understand what a legislative decision is. It doesn't have to be by a legislature. It can be by an administrative body. The original bimetallic decision was such a decision. And we would agree, but again, there's no decision. No one is going to point to any decision in the record here by the Department of Aviation that these people were not law enforcement officers. There is a decision by Maya Georges, I believe, at the City of Chicago that said they're not law enforcement officers. It was adopted by the State Board, right? The State Board adopted that position, correct? The State Board has to do what the municipality declares. The State Board is a registrar. They can't make someone a law enforcement officer. The only entities that can do that are via the Illinois Constitution, granted the authority to the Illinois legislature, which then gave it to the municipalities, which in turn gave it to the police department. Let me try from a slightly different angle. What process could the city provide to your clients? You're supposed to have a series of individual hearings about this legal status issue? There could have been a decision. I think as Judge Easterbrook is suggesting, there should have been some process to take away this designation, this classification that these individuals had, other than someone from the City of Chicago responding to ILETSB saying, yes, you're right, and then all of a sudden everyone is told, as of June 1st, you guys are not police officers. You never have been. You never will be, and all your history as law enforcement officers is wiped out. So in addition to this question about what processes do, I have to say I'm struggling with the property interest that you're asserting here. Can you direct us to case law that recognizes, well, as I understand it, what rights are we talking about, the right to carry a firearm? In private life, what are the rights that you say have been lost? So the classification as a law enforcement officer entitles individuals to various rights. Yes, what are they? Well, under the Law Enforcement Officer Safety Act, which was codified at 18 U.S.C. 926 B and C, which is under the Gun Control Act of 1968 in 2004, the United States Congress said that if you're a law enforcement officer, if you've been a law enforcement officer for a certain period of time, you now have the right to carry a weapon anywhere in any of the states, territories, municipalities. Okay, so you have a firearm. A firearm. Anything else? So you get the firearm. You have the right to not have a concealed carry permit. You have, in addition, there would be death. You would have benefits, death benefits, if you died as a law enforcement officer. You would have scholarship opportunity. Under state law? Both state and federal. Okay. Both state and federal. You would have death benefits. You would have scholarship benefits for the law enforcement officer and for family members. And then there's a plethora of other benefits. Okay. I'm assuming you've identified the most important ones. I think LEOSA is the one that this court, and by that Law Enforcement Officer Safety Act, which is codified at 18 U.S.C. 926 B and C, that one specifically acknowledges that law enforcement service, the time of law enforcement service, matters. And as a result of it, you receive certain benefits. And these individuals lost those benefits. And you may remember that when, for example, civil service interests in a job were recognized as a form of property protected by the Due Process Clause, that was a fairly adventurous decision by the Supreme Court, and we're all familiar with it now over the last 50-plus years. Can you direct us to case law that treats these kinds of benefits as individual property rights? Yes. So this is, I think even the defendant acknowledges that this is a unique case in the sense that you're looking at a classification that, as a result of that classification, engendered some benefit. The closest example we could find, which didn't actually deal with it, the issue that we're facing here, was an honorable discharge, and that that designation of an honorable discharge might constitute a benefit as a result of the designation that someone shouldn't be able to deprive someone of as a result of due process. That case ultimately never dealt with the issues that we're facing here. But what I would say, I do believe this is a case of first impression with respect to that. With respect to pretty much all of the cases that deal with property interests under the 14th Amendment, they each say that it's not just the position but also the benefits that inure to that person as a result of that position. So it's not just your job. It's the benefits that you get as a result of the job. Mr. Sweeney, I want to, before time elapses, move you to the promissory estoppel claim. Sure. Put to the side the collateral estoppel issues and just focus in on the collective bargaining agreement. Does the waiver section at 21.2 of the collective bargaining agreement preclude this type of promissory estoppel argument? We don't believe so, Your Honor. Why not? The reason that it would not is because this is a, we believe that this is a, as the estoppel cases look at, a promise that was made outside the context of the CBA. The CBA can't come back and simply say you can't agree to any other terms outside of those which we've negotiated. The case law clearly establishes that entities can agree to outside promises outside the context of the CBA. My apologies. The district court I think calls it the zipper clause. It's pretty broad at the end. It says even though such subjects or matters may not have been within the time they negotiated this agreement. It seems very broad. I agree. But to the extent that someone does negotiate a term or someone does offer a term outside of the CBA, that specific promise in this case we would suggest is one that they're not barred from doing. They can still do that. They can't come out and say, hey, we've got an agreement with you that says we can't agree to do anything else, but then come out and say, well, we're going to do this one thing. But if you try to assert any rights with respect to it, we're going to come back and say you waived it. So that's one. I would say it doesn't anticipate this. Two, it's unconscionable to the extent that they're making that kind of argument. And I would say with respect to promissory estoppel, I mean this is an extraordinary circumstance. You've got hundreds of individuals who went through a process, chose to go to this vocation as opposed to, they could have been security guards. They could have gone and maybe applied to other law enforcement agencies, but they chose to do this one. Why? Because it had certain benefits that resulted as a result of their application. They went to the police academy. They did all the things. I completely understand that, but that sounds like an argument to be made under state law in state court and you chose not to do that. How does it amount to a constitutional argument? Well, I was speaking of it in terms of the estoppel theory, but what we would suggest is that you can't simply wipe away hundreds, if not thousands of officers, years of service, which would be entitled to federal and state benefits, which the federal government has acknowledged is something that is tangible. You can look at it. I mean, the opinion by the district court flat out acknowledged the statements on pages four and five where it says, this has become rough. This was the letter from the ILETSB. They say in the second portion, this has become relevant as the board must regularly verify the status of retired law enforcement officers who are eligible for certain firearm privileges under the federal law enforcement officers safety act. After serving as law law enforcement officers for 10 years, they go on to say a page five on the district court quoted this as well. However, time employed by the CDA shall not be credited as law enforcement employment in any capacity, including but not limited to subsequent employment and participation in the retired officer concealed. I'm sorry, the Illinois retired officer concealed carry program. I don't understand what that has to do with the constitution of the United States. That's been my problem throughout as I hope you understand. I do. You might have a perfectly good claim under state law. So far as I can tell our argument. And if I could respond to your question, our argument is essentially that it can't be swept away simply through a letter that was sent saying, we didn't receive your first letter. We didn't receive your second letter, but Hey, you're right. And we're from the legal office of the city of Chicago and boom, there go thousands of employees, years of service. There needs to be some legislative act. Thank you. Counsel. Thank you. Mr. Merrill. Yeah. May it please the court plaintiffs bring due process and promise. I'll start itself with claims for their work history as law enforcement officers. Despite the fact that the ILRB already decided many of the issues, please use real words. It's not a word in the English language, even though the Illinois labor relations board already decided many of the issues for which plaintiffs need to demonstrate that a genuine dispute of fact exists. Since plaintiffs are precluded from relitigating those already determined facts due to collateral estoppel, they're incapable of succeeding on their claims. Mr. Merrill, how did the city respond to those decisions by the labor board? Did it comply? Or did it keep certifying? The only thing they're saying these folks is law enforcement officers. So the, there is no dispute among the parties that moving forward, these aviation security offers need to continue to be serving as law enforcement officers. Uh, the only dispute is about their past history, um, and whether they should still be recognized in some concept of work. I understood your position to be that for many years, the state labor board had been saying these people are not law enforcement officers, correct? Since, since the, the board's recent decision, uh, the state's decision, you're relying only on the most recent decision. So, yeah. Oh, I, I understand your question, your honor. Yes. They, that the only labor relations board has repeatedly observed, even if in many decisions, it wasn't a conclusive finding part of the decision that, that the, uh, that the aviation security officers and the unions represent them, uh, were not sworn in police officers. That does not mean they don't have certain security authority at the, uh, at the airports, but that they weren't in the most, the most recent decision said, in essence, we've been saying this for years, right? During those same decades, during which many of these players were working, as I understand it, um, the city was continuing to, um, sir, certify that they are and were, well, that they were in fact, law enforcement officers, right? Not withstanding those decisions of the state labor board. Yes. I would say there were mistakes made by the city in the past that were more assertive in their belief that ASO should be treated comparable to police. So I'm having, I guess I'm having a little trouble with the notion of issue preclusion. If the city wasn't acting as if those prior decisions precluded litigation of the issue. So the, the disposition is that this most recent decision by the, um, Illinois labor relations board was, was brought concerning the same factual issues that are presented to the, uh, the court here today. And, uh, was temporally occurring at the same, just before this most recent lawsuit occurred and was represented by the same parties because the union was in privity. And it was the specific factual determinations that that board made in this decision, um, that then the appellants are simply trying to relitigate yet again today. So it's not that their overall claims couldn't be brought in this court, but there are specific factual considerations that the board was very recently decided on almost exactly the same factual patterns before that. Now that they're trying to get a second bite of the apple before federal court, the decisions of the state labor board are subject to judicial review and state court. Is that right? Yes, I believe so. Okay. With respect to the cloud, we'll stop with that issue. I want to address this a little more in depth. The plaintiffs do not argue at any point in either of their briefs that cloud also doesn't apply what they argue. And what there's a dispute over is whether those already determined issues simply end this case in and of themselves, but whether this case starts and ends with collateral sample, plaintiffs can't attempt to relitigate those issues that the ILRB already decided. Uh, those include that the board, not the city was the one who deactivated the department of aviation status as a law enforcement agency. ASOs are not, and have never been police officers. ASOs must be sworn in by the superintendent under municipal ordinances to be special police. ASOs were not sworn in by the superintendent and ASOs could not justifiably rely on the city's representations that they might be special police. It's the city's positions that these facts might be. I thought the city's position was a lot clearer than that. Much of the, the evidence that the appellants are relying upon is, for example, the, these various insignia that these, uh, ASOs were given or the, um, the training manual. The city for decades has in fact treated these people as if they were law enforcement officers. There has probably been inconsistencies in the city's position. What's, what's the biggest inconsistency before the most recent state labor board decision. So for example, although there were these, this manual and these, uh, insignia that, uh, were given to these ASOs at the same time, they, so it's never been permitted. ASO aviation security officers. Apologies. Um, at the same time, they were never given, uh, the right to carry arms while on duty. They were never effectuating the arrests, uh, at the airport. They were detaining people for then formal arrests to be conducted by the Chicago police department. Um, and numerous other kind of powers associated with the, with what we traditionally view as police officers were not given to aviation security officers at any point. Um, but what's important is that even if this court were to find that these facts don't completely foreclose plaintiff's claims, that doesn't invite plaintiffs to then reitigate those, re-litigate those issues. Um, they repeatedly ignore this limitation, uh, because in the reply brief, for example, they say that whether they were sworn officers was quote, undoubtedly a question of fact. Again, the Illinois relations board already determined that aviation security officers were not sworn officers. Um, so that fact can't be re-litigated in this case, even if that fact on its own is enough to end this analysis. But in turning to the merits of the due process claim, plaintiffs claims fair no better. I want to first address the lack of any deprivation and lack of causation because both readily reveal the flaws in plaintiff's claims. First, the record shows that plaintiffs haven't been deprived of anything. Plaintiff's entire case seeks to ensure that the state doesn't erase, uh, aviation security officers time as law enforcement officers in its records. Well, the state has testified without contradiction and under oath that aviation security officers employed, um, by the board, uh, that avian records have not been erased or altered. Uh, Keiger testified as the board's 30 B six witness that when the board evaluated ASO's time, they determined quote, yes, time should be given credit. He could reiterate it multiple times during that deposition, that ASO employment histories are still part of an ASO filed with the board quote in no way are those histories going to be replaced or erased just because of discrepancies we encountered. So despite extensive discovery, plaintiffs have presented no evidence that anything in the state's records, let alone in the city's records has actually changed concerning ASO's LEO status. So I'm struggling here. Uh, counsel, if Ms. Yates or Mr. Rodriguez wants to carry a firearm under the auspices of federal law and they're stopped questioned about it. They say, I've got, I've got permission to do so. Um, check with the state board. What's the state board going to say? Well, according to the sworn deposition of the state 30 B six witness, he testified that nothing about their past LEO records have been changed. We have to take that as their, what their law enforcement officer status records has been changed. Um, the city record, but the state and the city will say, Oh, they weren't law enforcement officers. Well, John Keeger, the 30 B six one is saying that nothing about their past records have changed, um, uh, that they're still being, uh, their time's still completely getting credit and that their history as law enforcement officers hasn't been erased from the records. Cause specifically he was asked how these records are kind of maintained. And he said, you know, there are jurisdictions that sometimes go back and forth between whether their sheriff has enough funding to be considered, uh, uh, uh, law enforcement agency. And therefore the people who work under law enforcement officers, but what happens in that scenario is, is there's, they're kind of deactivated in the system as no longer being recognized as moving forward. A law enforcement officer deputies are not recognized as law enforcement. There are certain small jurisdictions where John Keeger testify that sometimes they go back and forth on whether they're recognized as a law enforcement agency because of funding issues. Um, but that in, in the, in the records, they don't have a, the state doesn't evidently have any means to kind of delete those past records. They simply just deactivate them in their system. So the records hasn't actually been changed for past, um, law enforcement officer status. And that's what the state testified. But I think that gets us to a big issue here, which is that to the extent that the plaintiffs have any claim, it's not against the city. Um, because the city has not been anyone that's caused them harm. Um, the city couldn't possibly cause them a property deprivation because the board is an agency of the state from which police powers flow exclusively controls law enforcement officer status. Um, importantly in municipalities, representations are not dispositive of whether the board decides to grant this type of status. And despite plaintiffs unsupported arguments in their briefing. And again, uh, in here in court, but the state simply rubber stamps, the city's decision. So the concrete John Keeger testified on behalf of the board that even if a municipality sought to designate someone as an LEO, the board would not necessarily recognize them if they did not independently satisfy the porch criteria for recognition. So it is important to stress just how little involvement the city actually has with the facts of this case. The city's relevant conduct with respects to removing this purported, uh, law enforcement officer status is limited to sending a one page letter in response to the board's very narrow question, inquiring when not if ASOs were placed outside of the police department's chain of command. The city responded that it could not figure out the answer to the board's question due to past management turnover. Other than that very limited non-answer response, the entire investigation and decision-making process surrounding plaintiff's law enforcement officer status was exclusively done by the state. The city was plainly none of their actions are plainly not the cause of any constitutional deprivation. In fact, if you look at plaintiff's actual requested relief in this case, um, it is largely for a declaration that their time serve quote shall remain intact in the official records of the board, not in any records the city may possess and not over which the city exercises any control. Mr. Morrell, let's spend a little time on the promissory estoppel claim. Is it your position that the waiver clause in the collective bargaining agreement precludes the state promissory estoppel claim? Yes. Elaborate. So the, uh, so the CBA does control because it explicitly mentioned it, although it doesn't specifically mention work history. Um, it does include what you were referring to the zipper clause and say it's the parties have the unlimited right and opportunity to make demands and proposals with respect to any subject and the understandings and agreements right by the parties are set forth in the CBA. Therefore, whether it's the chosen to field manual or the various insignia they were given, um, are trying to create some property interest in the classification tied to ASOs employment that is not provided in the CBA. That in turn is then directly contrary to the negotiated agreement that is the CBA. So even if something was as incorrect as apparently was with regard to the designation of the law enforcement officer, it would still fall within this waiver. You believe? Yes. And because what specifically here, they're, they're arguing that the, the LAO does the law enforcement officer designation is not something the city can get. It's beyond their authority. They can propose someone to be a law enforcement officer at the state, but ultimately it is the state's responsibility to decide whether or not they in fact meet their requirements to be a law enforcement officer. The city, at the end of the day cannot promise to give something that's beyond, uh, its powers to do so. Um, so the, and, and here with this idea of work history, I mean, your honors were discussing this, uh, to opposing council. It's unclear exactly what it is that they mean by work history. Obviously we all know kind of a layman's terms about what work history is, but what specific, um, elements of this concept of work history is that, that they claimed they were deprived of. Uh, and none of that was negotiated and, uh, collective bargaining agreement, which was foreclosed kind of an agreement on any other topics. Um, but in, and so just to continue on with the promissory estoppel claim, um, I think much of it is just a rehashing of the implied contract claim that they bring under the due process argument. Um, so the arguments are largely similar on that basis. There was no enforceable promise, as I was saying, because it was beyond the city's power to grant law enforcement officers recognition. That's something the state does. Um, and the aviation security office employment relationship was already covered by the CBA. Um, any reliance on the city's purported promises was also unjustified. And that's a fact that the Illinois labor relations board already decided. So it's something that they cannot relitigate here again today because of collateral estoppel. Um, and lastly, under Illinois law, it is quote rare and unusual unquote, uh, occasion that promissory estoppel is allowed against the municipality reserved only to prevent great fraud and injustice. Well, plaintiffs admit in their reply brief that they are not alleging fraud. Uh, and as for injustice, no aviation security officer lost their job. Council received the nails pay council. I'm, I'm a little worried about the claim that the labor board's decision itself creates an estoppel against the plaintiffs. I think the Supreme court has held that state administrative agencies are not courts for the purpose of determining rules of collateral estoppel and race judicata. Isn't that is my understanding. Incorrect. So the relevant collateral estoppel analysis of the case is governed by Illinois state law. Um, and under Illinois state law, they have to, uh, the courts have determined that I'm, I'm asking about a decision of the Supreme court of the United States saying that decisions of state administrative agencies and boards do not carry a estoppel effect in federal court decisions of state courts do decisions of state boards don't. Now I've been at pains with Mr. Sweeney to distinguish state and federal law, but here we are in federal court, presumably bound by decisions of the Supreme court of the United States. So I'm not aware of the specific case. You're not aware of it, but this court insignia health, uh, the of St. Louis, the Kaiser said the preclusive effect of a, of a state judgment in a federal case is a matter of state judgment.   That's the problem. Yeah. The, the, the proceeding that was before the Illinois labor relations board was a quasi-judicial proceeding, um, with all the bells and whistles that is normally associated with a, uh, an adjudication. We've been over this. You obviously don't know the controlling law. Thank you very much. The case has taken under advisement.